I had a question about the BIA's decision here. I.J. made alternative holdings, one that your client was not credible, but assuming that he's credible, he doesn't win. And the BIA sort of skips over the first one. Do we read that as the BIA accepting him as credible, or what do we make of the BIA's decision in that regard? Your Honor, I would say that in that regard, the BIA is finding him credible. Previously in a decision, in its first decision in 1998, the BIA did take some umbrage to the manner in which the immigration judge found the petitioner in this case not credible, and specifically stated in its decision that the board did believe that the petitioner was credible. The BIA had detailed and specific information regarding the instance that happened. The board's second decision following the reopening and following the remand back to the immigration judge simply echoed that theme, since they were requiring the judge to look at specifically the credibility themes as in regards to recent immigration. But the I.J. found him not credible again. And in the second go-round, and the BIA decision didn't reverse that or find that to be erroneous, they said, well, we're going to assume that the petitioner is credible and we're going to deny the petition on other grounds. So how is that an echo of its earlier credibility determination? It seems to me the BIA never made a credibility determination. Your Honor, this case was sent back specifically to the immigration judge to make a credibility determination based on the new standards. Right. But my question is whether the second decision where it says we agree that even assuming the respondent's credibility, he failed to meet the burdens of proof applicable to his claims. And I'm trying to understand whether that's a nondecision about credibility, an acceptance of his credibility, or an acceptance of the I.J.'s denial of his credibility. In my opinion, it's an acceptance of the credibility because the immigration judge did not recast his decision. He simply stated the same decision that he stated before in a different manner, but it made the same inconsistency problems. And the board specifically asked the judge to revisit those issues, and the judge did not. He simply reiterated his previous decision and kept the same problematic issues with the credibility findings that the BIA had originally sent it back down to the judge to decide. I'm sympathetic with your argument. That is to say, I read the I.J.'s decision the first time around, and then I read the I.J.'s decision the second time around, and it did not seem to me that he changed his analysis very much. On the other hand, the BIA, when it sees it again, doesn't say you didn't really change your analysis, and we think for the reasons stated before that your credibility finding is faulty. It simply says, even assuming. If taken alone, I would say that that would be the BIA taking a hands-off on the credibility, but given the fact that they had already made a decision about the petitioner being credible, that they found that as the record stood, he did make a credible testimony that given those two together, that the BIA is not just taking a hands-off approach, but suggesting that the immigration judge has not really addressed the matter properly in its decision, and they're going to assume that he is credible, but that the Board was taking issue with the other. Why didn't they just say that then, that we find the petitioner credible and we deny the application on other grounds? It's a curious way of saying it, if that's what they meant to say. I agree, Your Honor. It's a completely ambiguous way of saying it, and if it were alone, again, I would say that it was ambiguous, but given the fact that the BIA had already touched upon this matter in great detail in previous decisions. Here's the reason I'm asking the question. I want you to assume, for the purpose of this question, that we agree with you that, assuming credibility, he did establish persecution, and that that's a compelled finding if he's credible. So if we disagreed with that reason that the IJ gave, and the only reason that the BIA gave, under Ventura, wouldn't we have to send it back to the BIA to look specifically at credibility? In other words, it's kind of a long-winded question. If the testimony establishes persecution, but we're not sure the testimony is true because the BIA hasn't made an explicit decision, isn't the answer we send it back to the BIA? Again, I believe that the BIA has made an explicit decision, but if you find that the persecution is true, I believe that that would be sufficient enough to make a decision on this case without having it to go back to the BIA. Your argument would basically be we can look at the BIA's first decision where it says your credibility findings weren't sufficient. We can then look at what he did after remand and make up our own minds and say we know what the BIA would do. We're a little gun-shy on Ventura, as you might guess. Well, I would agree, Your Honor, that given the fact that the BIA has already made a detailed decision in one hand on credibility, the BIA should be consistent in its finding, again, that the credibility issue was not publicly determined by the judge. But they didn't do that. I mean, at least they didn't do it explicitly. So you're asking us kind of to look through the second decision to the first one. That's correct, Your Honor. Yeah. Assuming credibility, one way or the other, why is a finding compelled in favor of your client on the facts that I'm now taking for the purpose of my question, to be truthful testimony? As the facts have stated, he did suffer persecution at the hands of the National People's Army in the Philippines. He gave detailed testimony about the number of incidences that occurred. And what he regarded was the MPA's involvement in harassing him and attempting to take his life. And this all stemmed from his involvement in a student organization when he was in college, which was associated, unbeknownst to him, with the MPA. All of those facts taken together, if you find credibility, suggest that he was persecuted, and he was persecuted based upon his political beliefs. No, that's fair. Okay, I'm with you. And, again, these were his – because the Board has really assumed that the credibility exists, and the fact that all of the testimony of the petitioner will be considered as true, although he has met the burdens that he needs to show in order to show that he was persecuted in the Philippines, and the government has not met the burden to show anything that there has been a change in the country conditions or that he would not suffer harm now, should he have to return. I think the – in fact, I don't see that the government has made any arguments on the merits whatsoever at all in the appellate process. The BIA appeal was simply a two-sentence response, and the response in this was jurisdictional entirely and did not cover the merits whatsoever. Thank you. Okay, we have a couple of minutes left for rebuttal, if you want them, and we'll now hear from the government. May it please the Court, my name is Anne Tumai. I represent the United States Attorney General. There are a couple of preliminary matters. First, the decision that is subject to review is the Board's decision, and to the extent that the Board relied on the reasoning of the IJ's decision, then the immigration judge's decision is reviewed only to the extent that the Board's decision relied upon those portions of the immigration judge's decision. As to Petitioner's argument that the Board affirmed without opinion, that is not the case here whatsoever. Its citation to Matt Burbano indicates that, and if anything, if it affirmed without opinion, that actually hurts Petitioner because So what do we do with the previous Board decision? Is that part of what we consider when we consider what the Board has done? No, Your Honor. Not in this case. So to go back to my hypothetical, if we disagree with the government's position on whether the facts taken as true, equal persecution, then we would have to return it under Ventura for the Board to consider explicitly the IJ's alternative reasoning? Your Honor. Or would we just simply grant the petition outright? In this case, I'm not quite certain if I understand Your Honor's question. Well, the BIA's decision in this final order says even assuming, I'm paraphrasing because I can't remember it precisely, it says even assuming that the Petitioner is being truthful, he hasn't met his burden of proof. Correct, Your Honor. If we disagree with that and we find that he did meet his burden of proof, that that's the only The inescapable conclusion is that he met his burden of proof if he was truthful. It seems to me we have two choices at that juncture. One is to say he wins flat out. The other is to say the BIA gets another bite at the credibility apple. Which is the proper outcome and why? Your Honor, remand would be necessary if the Court were to find that he has satisfied his burden of proof, which he did not in this case. Especially where the immigration, one of the reasons the immigration judge denied his applications was as a matter of discretion. So at a minimum, the remand would be necessitated by the Board's consideration of whether or not discretion would be warranted. Well, there's always a, even when somebody wins, it means that there's an exercise of discretion by the Attorney General. But here, I guess my question comes down to this. The BIA had at least two choices in reviewing the IJ if it wanted to agree with the IJ. One choice was to say, well, now we're satisfied that he's not credible, and so we don't have to go any further. The other choice is the choice that they took, which is to assume that he was credible. So do we stay with that? Is that the BIA's made its choice, and so then we would just grant the petition and allow the Attorney General to exercise discretion? Your Honor, may the Court may decide to remand to address specifically the credibility issue. However, in this case, the Board was free. It took into consideration the immigration judge's credibility findings. There were actually five different rounds. The Board chose to base it solely on the one finding that Petitioner had not met his circumstances were on account of any protected ground. The other alternative basis would have been finding that the service had overcome the rebuttable presumption of a well-founded fear of persecution and to state that Petitioner had not done anything to the contrary to establish a well-founded fear in light of the presumption being rebutted. And in this case, the Board solely relied on the immigration judge's finding that he had not satisfied his burden of proving that any alleged persecution was on account of a protected ground, specifically an imputed political claim. No, that's not really what the BIA said. BIA was more general than that. I'm just reading. BIA writes, this is the second time around, in 2003, quote, We agree that, even assuming the Respondent's credibility, he failed to meet the burdens of proof applicable to his asylum and withholding applications. That's a pretty broad business, and they're not picking and choosing among the grounds. They're just saying, on the merits of assuming credibility, he loses, boom, period. Yes, Your Honor. But in reviewing the immigration judge's decision here, clearly the Board had relied on the reasoning of the immigration judge. And in reviewing the immigration judge's decision, there are only five grounds, two which were related, the credibility issues. And the Board's decision clearly states that it's not touching or it's not considering whether or not Petitioner had presented a credible claim. Rather, the Board says, if anything, that it's limiting its reasoning to the immigration judge's findings, alternative findings. So if we disagree with that conclusion of the Board, what do we do about credibility? Your Honor, then, as to the credibility, then the courts then may remand for consideration of it, or the courts may make an assessment. But in this case, the court should, because, if anything, the immigration judge specifically made a ruling on credibility, that the court has two options. One, under this case, the case law of the court, the court has stated that where the Board is silent on the credibility issue, then the court may proceed by presuming that the testimony was credible. The alternative is where the court were to find that there was some sort of lack of clarity in terms of it, and that the Board wasn't really silent, but they did not act specifically, speak to the credibility issue, then remand would be appropriate on the credibility issue. So we could say, if we wanted to, the government's wrong about the meeting the criteria for relief and simply grant the petition. That would be jurisdictionally possible. We would not have to send it back to the BIA. In light of the Ninth Circuit law dealing with where the Board is silent in terms of credibility, that is one possible application. Go ahead. I'm sorry. This is the same I.J. who the Board roundly chastised for the way he conducted the original hearing. So why would we want to send it back to that I.J. in particular? Your Honor, in terms of that would not be something that I can speak to. But what is critical here is the focus should be on the Board's reasoning. And in that regard, the Board's reasoning is justified. First, the court needs to remember that the petitioner abandoned any claim that he did satisfy the burden of proving that any of his alleged persecution was on account of a protected ground. He doesn't speak to it in this brief whatsoever. Let's assume we disagree with you on that, that he's not waived that argument. Is his claim doomed because of the anonymity and his inability to know exactly who was throwing rocks and shooting and doing all these various things? Your Honor, in part it is doomed for that reason. It is also doomed because he, by his own testimony, states that his belief in terms of any grounds for the alleged persecution was simply because these anonymous individuals were probably affiliated with the NPR, at least the student organization he used to be a part of. And if anything, they wanted him to be silent on a secret that they had about their affiliation with the NPA, and that they might have wanted him simply to rejoin the group. His testimony in the record at page 171 states that he basically did – there wasn't any political opinion that his alleged persecutions actually imputed to him. Rather, it was for other reasons that are not protected under the statute. Where are you on 171? And what do you rely on on page 171? Your Honor, if you will give me a moment. Your Honor, towards the bottom at line 21, in response to you, why do you think they were calling you as far as the – at least the threat – the alleged threats that were made against him by these anonymous individuals? He responded, they want – I think they want to inflict fear on me, so I won't talk to any authorities. And also they – by inflicting fear, they think I might rejoin again. Right. And in your view, that's a damaging thing for him to have said? Your Honor, yes. Because? Because it indicates that he didn't even believe that any experiences he had that prompted his departure was because his alleged persecutors imputed any political opinion. Rather, it was because they wanted him to keep a secret or to try to recruit him. And the case law shows that at a minimum, conscription is not a basis for protection under the asylum statute. So he had to prove more, and even his – at best, his claims are a conclusory. And this Court has determined in Mateo Mendez that where a petitioner has raised a claim by merely asserting conclusory arguments, that that's not sufficient to establish an actual claim under the federal rules, where he has to not only set forth his contentions, but the reasoning and citations to the record and authorities to support his claim. He hasn't done so here, not in terms of the on-accounta. Okay. Let me ask you this. And this is a ground we've been over before, but I don't have an answer that's quite clean. And you may or may not be in a position to give one. But I'm coming back to what I'll call the Ventura issue. If we decide – and this is a hypothetical – if we decide that if credible, the testimony compels a finding for eligibility for asylum, are we required to remand for a credibility determination under Ventura, or is it the government's position that we may properly decide the credibility question ourselves by saying that the BIA has, in effect, found this person credible? Your Honor, it's the government's position that remand would be appropriate. However, the government also acknowledges that the case law of the Court suggests that there might be a basis for the Court to make an assessment in terms of credibility. However – You're saying that the BIA has made an assessment, not that we would make one. Yes, Your Honor. That there is some sort of implication. But in that regard, if that were the case, then the Respondent would request an opportunity to provide supplemental briefing on the merits because it would otherwise prejudice the petitioner in terms of a credibility claim where the Board specifically stated that it was not going to make an – or at least that it specifically stated its reasoning was not based on the credibility assessment of the immigration judge, but rather on the alternative finding that he did not satisfy his burden of proof. And whether the Court determines that he has sufficiently raised it, which he hasn't by a conclusory argument, or whether the Court looks at the record and recognizes under its own law that inferences under the circumstances cannot be made unless the petitioner actually meets his burden of showing – This is a practical question. Do you really want to go back on credibility? That is to say, as I read the BIA the first time around, they said to the I.J., You were really off base in your adverse credibility finding. And go back and do it again. As I read what the I.J. did, he thumbed his nose at the BIA and said, Well, you thought I was off base before. I'm staying right here. And come and get me. Now, maybe the BIA will back away from its prior position, but if the BIA sticks with its first position, credibility is a foregone conclusion. Do you really want, as a practical matter, to go through that? Your Honor, as a practical matter, then I cannot speak to it because it would seem that it would be more efficient. But that would require us to speculate and guess as to what the Board's position would be on as to credibility. So it would be inappropriate for me to then state whether or not it would be. So in that regard, it's based solely on the burden of proving he hasn't met it. Thank you. Thank you, Counsel. Mr. Lowe, you have some time. If you don't, we're going to give you some because the government has had a little extra time. And I have a question for you on the merits that I'd like you to help me with. As I understand the record, boiled down, your client quit the organization whose name I can't pronounce properly, Macamasa. And a series of anonymous things happened to him, which I take to be, looked at most in his favor, an attempt to get him to rejoin. Either rejoin or definitely don't tell anybody about us. Is that political opinion under the case law, assuming that that's what was happening, that this organization, which was political, wanted him back, wanted him to become a member? Is that a protected ground? I believe so, Your Honor. I mean, it is political opinion. It was a political group. Whether he was a part of the group or not a part of the group, his decision was seen by the group as making a political decision. That is, you are either with us or you are against us. They called him in that same page in which the government cited, page 171 of the record, early on that page he said that they called him a traitor, that they threatened him because he was a traitor. And that means that the group at least believed that he had political opinion that was against theirs, that he did not follow what they were espousing. If what they want is a body to do whatever they're doing, regardless of the opinion that the person holds, I guess that's where I guess I'm mulling over, whether wanting somebody's help is the same thing as being mad at them for an opinion that they hold that's different than yours. Well, I believe, Your Honor, he was a member of the group for four months, and he was privy to some information according to his testimony that was detrimental, perhaps, to the organization if it got out. And they could have felt it was more beneficial to them to have him in the fold where they could control the release of that information rather than to have him outside where they did not know what would happen. But is that persecution on account of his political opinion, or is it persecution on account of something else? I believe it's his political opinion. When he left the group, he specifically stated he did not follow the violent overthrow of the government that is espoused by the MPA and thus did not want to be part of it. That is a political opinion. And because he pushed himself away from the group and made himself not want to be a part of the group anymore, then they took that to mean that his political opinion did not follow their political opinion as they wanted it to. And I believe that that does constitute a ground for finding that these actions were made on the account of his political opinion. I took away your entire time. Is there anything else you wanted to add? The only other thing I wanted to add, Your Honors, is that the BIA and the immigration judge had two chances to review credibility in this instance. And the immigration judge, as duly noted, simply decided that his original opinion on credibility was sufficient, regardless of what the Board had instructed him to do. And the Board, having made a detailed decision regarding credibility, regarding the substance of the testimony of Petitioner, had believed that the BIA's second opinion was simply part of that first opinion, in that they were going back. They had already made the credibility determination, and now they were assuming credibility, and they were further going on to find the burdens of proof in the other asylum application. Thank you, Counsel. Thank you, Your Honor. I appreciate the arguments from both of you, and the case just argued is submitted.
judges: Graber, W. Fletcher, Fogel